Good morning. May it please the Court. I am Valerie Anzucan, appearing for Petitioner, along with Mark Vanderhout and Megan Salomi. Petitioner is present in court today with her husband, her daughter, and several community members. I'd like to reserve three minutes for rebuttal. Petitioner's case is before the Court today because she faces grave danger in Nigeria, and she's never had the opportunity to present her case for protection under the petitioner's motion to reopen, and in so doing made several fundamental errors in holding that it's time and number barred. Her motion is not subject to these limitations because it's based on changed circumstances, which is under a different regulatory scheme. I plan to discuss the Board's three chief legal errors, each of which individually requires reversal. First What's the most serious problem with the Board's decision? I think the most serious problem with the Board's decision is that, given this Court's holding in Chandra, it failed to consider the events that occurred in the United States together with the events that occurred in Nigeria. The threats that she experienced here in the United States. Correct. What about the timing on the threats? Can you go over that? Because the BIA was saying that they occurred before her hearing, and I think you're claiming that most of them occurred post her hearing. That's correct. So I think that there are two issues here. One is that the Board, in some respect, stated the proper standard is to measure from the previous hearing. However, in its analysis, it became apparent that they were not, in fact, comparing everything before the previous hearing with everything after the hearing. Indeed, the Board conflated the events that occurred after 1993, particularly with regard to the threats made to Petitioner's mother in Nigeria. At AR 5 to 6, the Board discusses the threats that were made against Petitioner's mother prior to 2010. Particularly at the top of page 6, the Board is stating that the mother was threatened 18 times in Nigeria and then goes on to refer to the new threat in Nigeria, which shows that they were not acknowledging that many of the prior threats to the mother occurred after the hearing. And that is evident if you compare AR 78 and AR 705, which set up the timeline. The mother began to receive threats shortly after Petitioner was arrested, and those threats continued. Sorry, the threats began a few months after she was arrested and continued for at least a couple of years. So therefore, they must have gone on after the hearing date. But I think the declaration shows she received repeated threats from this person, Goblehan. After the start of her incarceration in 1992, but before the 1993 hearing. So it just makes it a little bit difficult in light of that to know if the BIA said this, whether they were wrong, I mean, in terms of denying her relief. So the Board seems to have accredited all of the prior threats, all of the threats to the mother prior to 2010. The Board has clearly credited all of those to prior to the last hearing. That's a clear error. They credited the ones prior to 1993, which they were allowed to do, correct? It appears that they credited all of those prior to 2010, as though they all were prior to the prior hearing. But that's not correct. So help me. But it is correct that they are allowed to do it prior to 1993. They are allowed to compare what happened prior to 1993, the October 1993 hearing date, to everything that occurred after the October 1993 hearing date. I'm sorry. Finish your answer. No, go ahead. I'm just trying to figure out how many occurred post-1993. It's hard to quantify precisely how many occurred post-1993. I would estimate approximately half of the 18 threats. So what do we do with that? I mean, since the BIA did take into account the ones prior to 1993, and then apparently, you know, the ones post-1993 are similar to the ones prior to 1993, can we say they were wrong? We can say they were wrong. And the reason we should say that they were wrong is that the events of 2010, when viewed in context of what happened from 1993 to 1997, are particularly significant. From 1993 to 1997, Petitioner continued to receive letters that were threats directly from Bolaho, and her mother was approached by individuals in Nigeria during that same period. And then there was what's most alarming and concerning about the events of 2010 is that from 1997 until 2010, there was a period of complete dormancy and inactivity. And then in 2010, you have different individuals contacting Petitioner, individuals who had not written her the letters before, but who are affiliated with Bolaho, who sought her out, found her, had a new phone number, had a new address, one of whom threatened her. And then immediately thereafter, mothers approached again in Nigeria after she's moved multiple times and lives in a different place in Nigeria. Let me try to rephrase what's concerning me here and see if you can answer it. The board turns down the first petition to reopen and says you haven't shown that anything has changed since the time of the hearing. Correct? Correct. On the one we're dealing with now, they say this really doesn't demonstrate anything different. These are not new. These are not facts that change, that are materially different than the ones we considered at the time of dealing with the first motion to reopen. I need to correct my last statement, Your Honor. I misunderstood your question. When you said they denied her ---- First one is out of time barred. It's time barred, right? Okay. The prior motion to reopen Petitioner filed before the one that's at issue today. Right. There were two. Right. And each of those was based on the provision, the CAT implementing regulation provision for reopening. Right. Neither of them asserted changed circumstances. Okay. And neither of them presented any of the facts that are before the court now. Right. I understand. I understand. But they say there's nothing here that's different than the fact you ---- than the facts you have attempted to present us before. Correct? These are not materially different than the facts considered before. Not ---- they weren't considered before. They're saying they're not materially different. Well, they were considered in 1993. They were not. They were not considered in 1993. In 1993, Petitioner presented a petition for a 212c waiver. Petitioner at the time was ineligible for asylum or withholding, and CAT did not exist. Right. She never had any opportunity to present. But she comes in later and she says ---- and slow down, we'll give you time. You don't have to speak as fast as you possibly can. You need to help me here. She comes in and says I'm eligible for CAT relief, right? At which point? Well, you tell me at which point. When it becomes available. When it becomes available. She says I would now ---- I would now like CAT relief. In 2004, she filed a motion to reopen for a pre ---- based on a preexisting CAT claim. As a criminal deportee, she would be in danger of not presenting any of these facts. Okay. Because in 2004 ---- No, no. Stop, stop. In 2004, she presents a application for CAT relief saying I will be in danger only as a criminal deportee. Correct. Not mentioning any other facts. Correct. No, because of her drug ---- Because of her drug conviction. Because of her drug conviction. And because in 2004, nothing had happened for so many years. She didn't have immediate ---- Okay. No, but this is ---- Now, just wait. But things had happened before 2004. Sure. As Judge McGeeh points out, any number of things had happened before 2004. She then comes back later with an enhanced application, right? And says I've got a bunch of new information. And the board says this is not materially different than things that had happened before you filed your 2004 application. They don't quite say it that way, but that's sort of the way I read it. You haven't ---- This is not new stuff since 2004. It's all of the same ilk of the threats that happened before that. If that's what they did, and I'm not sure it's what they did procedurally, they may have said it differently, what's wrong with that? under the regulation 8 CFR 1003.2C32 and the explicit holdings of this court, the date from which to measure change circumstances is the date of the prior hearing. In fact, in Malte ---- No, and I understand that. But what they said was, look, you came in in 2004 with some information. We didn't think that was ---- We didn't think that gave rise to your right to cat relief. You've now come forward with more information, but that's not really very different than information that was available to you in 2004 when you came in. And therefore, we're going to deny your application. So it's really looking backwards in the sense that the 2004 one, you had the ability at that time to bring in any information that occurred from 1993 to 2004. There may be a procedural problem with that, and if there's so, I'd like to know it. But substantively, it sounds like they stumbled their way through to a conclusion that there's nothing new here. So tell me why that was wrong. That was wrong because they had to measure from the prior hearing date. Well, it was qualitatively different. Qualitatively different has to be measured from 1993. And so the problem with their analysis is they don't consider everything from 1993 to 2010 and compare all of that to what happened before the October 1993 hearing date. So let me rephrase this a little bit, and I don't think this is what happened procedurally, but I want to make sure I understand. Let's assume that in 2004, they say, we've considered everything from 1993 to 2004, and you don't get cat relief. And then in 2010, you come in with another application that says, I've got some new stuff. And they say, well, in 2004, we didn't think you had enough, and this isn't any different than what you had in 2004. Technically, at that point, they wouldn't have been looking all the way back. They'd be comparing the 2004 to the present. But as a matter of analysis, wouldn't that be exactly the same analysis they were supposed to do? No, it would not. No, but if you don't have enough then, and what you've given us now isn't any better than what you had then, why isn't that really an analysis that functionally goes all the way back to 1993? Kat, the reason that there is a special provision for reopening that has absolutely no time or numerical limitation for Kat is because Kat is a particularly important international convention to prevent people from being deported to a place where they face death. There's no due diligence requirement like there is, for example, in equitable tolling. And there would be a fundamental problem with a rule where if an individual receives threats subsequently over time, that that individual is penalized for trying to apply for relief at one point when it's not enough, and then later is told that it's still not enough. It has to be measured from the prior hearing date per the plain language of the regulations. And if it's looked at that, if that whole period is looked at properly, it is indeed a change and qualitatively different, because what happened in 2010 is particularly significant given the gap of inactivity and then the reinterest and resurgence of events. Well, I guess I want to, how much are we supposed to focus on the fact, I mean, because I'm trying to figure out, that it just didn't exist. I mean, because these were new threats, right, post-1993. There were new threats post-1993, or were these threats in existence prior to 1993? Wasn't there more recent activity? Yes, there was. So there were the recent activity occur post-1993. So from 1993 to 1997, events continued that had already been happening, and then nothing happened from 1997 until 2010. In 2010, Petitioner was contacted and threatened, and then her mother was located and threatened in Nigeria. Okay. And the fact that that was just not in existence, not something that she could have brought forward, are you saying that's all that matters here? Or are you saying, those threats, even though they were kind of similar, they weren't in existence and they're worse? I'm just trying to figure out, because we have to try to figure out whether the BIA erred. And so what is your argument precisely? My precise argument is that under the plain language of the regulation, that the Board was required to consider the entirety of events, the totality, the aggregate per this Court's recent decision, Quijada Aguilar, of events that occurred from the prior hearing date. So that's from October 1993 to 2010, all of those things. And the 2010 events, in a sense, could almost stand on their own, but they don't have to stand on their own. They shouldn't, and legally they cannot. They have to be viewed in context of what happened from 93 to 97. You start off by saying that the Chandra issue was the most serious problem here. Yes. Explain it to me. At every point that the Board made throughout AR-5 and AR-6, they continue to reason with each point that they dismiss that she didn't demonstrate changed circumstances in Nigeria, and they seem to discount anything that happened in the United States. And Chandra specifically holds that events in the United States – well, Chandra says personal circumstances. Events in the United States can be evidence of changed conditions in Nigeria. Sure. But weren't they inartfully saying that what happened in the United States didn't demonstrate changed conditions in Nigeria because, as they said before, it's not really any different than the threats you got prior to 1993? Their wording shows that they were not counting what happened in the United States because they say threats in the United States are not in Nigeria. Is the not counting here because they're not any different than the threats you had before, or is the not counting here because I'm not allowed to count them? That's what I'm trying to read from their – their order is not clear on that. Either way is wrong. And I don't think the Board's decision is particularly clear in the way that it's written, but it seems to me that they're discounting them because they occurred in the United States. It seems clear in the language of the Board's decision. But either way, it's error because they have to consider the totality, the aggregate of the evidence, and they have to consider what happened in the U.S. in as much as it relates to what happened in Nigeria. We'll let you go over. We've had a lot of questions. But let's hear from the Governor. I'll give you some time for rebuttal. Thank you. May it please the Court, Victor Lawrence on behalf of the Attorney General. Good morning, Mr. Lawrence. Good morning. The decision here – the Board's decision here is difficult to follow. Just – if you followed Judge Hurwitz's questioning. Absolutely. It is difficult. But you have to read the Board's decision in context with the way the motion was brought to the Board. Because what the Board is doing, in its opinion, is it's answering the precise arguments that Petitioner brought to it in its actual motion to reopen. So what I want to persuade the Court to do is to focus on the language that was brought to the Board in the motion to reopen, and that's how you see what the Board did with that. So, first of all, when the Petitioner filed their motion to reopen, this, again, was their third motion to reopen, and it was filed some 18 years after the conclusion of the removal proceedings. And we believe that the Board acted appropriately and within its broad discretion when it denied Petitioner's motion to reopen as a failure to show changed circumstances. But the arguments that they brought, if I may, Your Honor, the arguments that they brought to the Board when they referred to Petitioner is that in 2010, there were changed circumstances that qualified so that they could bring this motion to reopen. They didn't talk about this cumulative. Well, perhaps they didn't, and maybe that was a failure on the part of the Petitioner. But wasn't it the Board's duty to look at the aggregate of evidence since the hearing to see whether or not the requisites of the Convention against Torture had been  And there, Your Honor, I would say that the Board did that in any event. Pages 5 and 6 of the Board's opinion detail, and even before that, detail all of the threats that occurred in the history of time with this Petitioner. So it's not as if they were ignoring those earlier threats. They were considering the aggregate. Let's go over the logger. Let's look at the language here. It says, the BIA stated that Williams says – I'm sorry, Your Honor, where are you? Page 5, I think it is. AR5? Yes. Claimed that the current threats are worse. This is what the BIA stated. Williams claimed that the current threats are worse than the earlier ones. Conflicts with the Respondent's own declarations. It goes on, including her assertion that Globohan's letters continued to arrive until 1997 or 1998. And it says, Williams does not describe any new threat in Nigeria that is qualitatively different from those made before her last hearings. And I'm just not sure if that was proper for the BIA to consider threats received after 1993 as part of the set of evidence she could have presented in her 1993 hearing when they weren't in existence prior to 1993. I'm asking you, what do we do? What do we do with that? And then it says, you know, it seems that the BIA also, and I'm not sure they were correct to do this, considered whether Williams' evidence was qualitatively different. I'm trying to figure out what do we do with this qualitatively different, because it looks like they looked at that and said that the evidence was qualitatively different from evidence that she did not even present at her previous hearing. It seems like this is contrary to our law. I think that Malte v. Ashcroft says they're not supposed to do that. Your Honor, I respectfully disagree. And let me try to parse through that and explain the reasoning here. First of all, in this paragraph at the end of page 5 that you're referring to, when they're talking about the current threats and they're comparing them to previous threats, they're directly answering a statement made by the Petitioner in her reply brief at page 4 where they indicate that they believe these 2010 threats were much worse than the previous threats. Well, let's assume they weren't. Let's assume that they were not qualitatively different than the previous threats, but they are new threats. Doesn't the Board have to consider all the threats that occurred since 1993 and all the things that changed since 1993 in the aggregate? Is it enough that they're not different? In other words, if Judge Pius threatens to kill me in 1993 and then I receive the same threat of other people in the same language later, they're not qualitatively different, but they might be evidence suggesting that I'm in more danger than I was in 1993. Why doesn't the Board have to consider them? Even if they're not qualitatively different, why doesn't the Board have to consider them in the aggregate? Well, one, I think the Board did. But more precisely, what I think the Board was doing here was they were answering the exact argument that was brought before. Let's assume that they're – let's assume that – I don't know who the attorneys were. The attorneys today are quite able. Well, let's assume they just didn't put it right. Same attorneys. Okay. Let's assume they just didn't put it right. But we're dealing with a convention against torture. Yes. And so whether or not the attorneys got the arguments precisely correct, isn't it the Board's job here to look at all this evidence in the aggregate and see whether or not we're deporting somebody who's likely to be tortured in the country where we're sending them? And there again, Your Honor, I believe that the Board has done that. They are looking at the entire scope of evidence and they detail it in their opinion, all the threats that were received. But ultimately, you know, under the law for changed circumstances in Malti, Najmabadi and others, there's four hurdles that a petitioner must clear. One of them is that they have to show that there are changed circumstances in the country of origin. And another is that the evidence has to be material. And there are two more. But the Board in this decision only had to focus on those first two. And they looked at the two threats that were highlighted by Petitioner in their motion to reopen as being the cause of this motion for changed circumstances. And Petitioner states that, by the way, at pages 43 of her motion to reopen. In paragraphs 2 through 4, they emphasize that we're bringing this motion because of threats that occurred in 2010 that are significantly worse, they said, than previous threats. Well, but the case that the BIA relied on for its qualitatively different assessment or test was Najmabadi. Yes. And that's a case where evidence of persecution was presented at the alien's previous hearing. I think it seems like this case may be different because the claim for relief did not exist at the time of the last hearing. Right. I mean, so shouldn't the question be whether the evidence can be said to have been available when the legal theory was not available previously? So I'm having trouble. Sure. And, Your Honor, this is precisely what the government's brief focused on with respect to the July 1999 or, excuse me, June 21st, 1999 deadline for filing CAT claims. You're absolutely correct, Your Honor, that in 1993, CAT was not available. But a reg was put forth in March of 1991 that said, if you have any claims under the Convention Against Torture, file them by June 21st, 1999. Now, we know that the Petitioner did not do that. She waited until 2004. And that's why the order focuses on the previous application, saying that, in effect, takes you back to the last hearing because we made it available to you.  I think that's accurate. But I would even – our opening brief, our answering brief argues that the 1999 date is the date of the correct measure here. But in any event, you're right, Your Honor, that in 1993, these claims did not exist. But in 1999, the – everybody in the United States was given notice through the Federal Register that if you had a claim under the Convention Against Torture, bring it by June 21st. Petitioner failed to do that. She brought her claim in 2004. And at that time, this Court indicated that she had proper notice to bring the claims by 1999, but didn't do so. Now, we're not saying she can't bring a claim later for changed circumstances, but we are noting the fact that a wealth of this evidence was available prior to 1999. So, but I want to understand your position. Is your position that she can only argue changed circumstances since 1999, or can she argue changed circumstances since 1993? So that's a million-dollar question, Your Honor. Let me just – I understood your answer to be that she – when they – with the regulation that she had to go all the way back to the hearing, which was 1993. The regulation says 1993, no doubt about that. Okay. But the practical reality is she had the opportunity to bring the claim in 1999. So despite the regulation saying 1993, and, you know, we've already discussed the Board's decision, has some ambiguity in some places, but we believe that that's what they were doing. They were comparing. You know, we have case law that says when we cannot figure out what the Board did, send it back. But, Your Honor, I think – Yeah. Because I do, you know, at times they talk about the last hearing, the last hearing, and other times it does look like they're comparing new events to about 1997-98. But that's – And it's just not clear what they're doing here. But, Your Honor, I do believe it becomes clear when you look at the arguments that were brought before the Board, because it's been repostered since that time. The arguments that Petitioners made since the decision of the Board have argued this cumulative effect from 1993 to present. But the focus of their arguments before the Board in almost every time they raised looking at the 2010 threats as compared to everything else. But very important, I want to focus on Your Honor's question about the mother's threats in 1993. Because with the Board – not 1993, but we believe – 2010, right? Yes. Well, yes. First, with respect to the 2010 threat against the mother, they're looking at that versus what happened previously. And no matter what, Your Honor, whether you're looking at a 1999 date to compare to her 1993 date, it becomes clear that the threats are not qualitatively different. But to answer Your Honor's question when she was concerned about the 18 threats and when they occurred, those threats occurred after she was – the Petitioner was arrested, not after the conviction. She was arrested in 1990. And the mother details threats that occurred for the next couple years after 1990. We would submit that all of those threats, if not the vast majority of the 18 threats that occurred to the mother, occurred prior to her last hearing. Remember, the last hearing date is October 21st, 1993. She was arrested in 1990. And I have the precise dates for you where that occurred. Are you saying nothing happened post-1993? No. Nothing happened with respect to the mother except for the 2010 threat. And that's important, because what the Board's doing is they're saying, okay, let's look at this 2010 threat against the mother and compare whether it's qualitatively different. And they found that it wasn't, because they found that there were 18 threats against the mother, serious threats, threats of harm, threats of death, between the time she was arrested and the time of the last hearing, last hearing being 1993, time of arrest 1990. You know, in the record, you can find her arrest date at page 71 of the record. The mother says it occurred two weeks, or the petitioner, one or the other, said it occurred two weeks after her arrest of, excuse me, that the arrest occurred two weeks after her last trip to Nigeria. That occurred in October 1990, and that's at page 637 of the record. So after her last trip to Nigeria, she gets arrested, and then that's when these threats in Nigeria are happening with the mother, 18 threats over the next couple of years. All of that's prior to 1993, and this is why it doesn't make a difference whether it's 1993 or 1999, because the Board is saying, look, you showed us 18 threats against the mother between 1990 and 1993, and you're showing us one now in 2010. A, we don't think it's more serious than the other ones, and B, it's not qualitatively different. It's more of the same. And on that note, there's absolutely no reason to suggest that the Board abused its discretion by comparing that. Well, here's my concern, and I do think the Board, if the Board were as eloquent as you... Thank you. ...we would have to, I think we would be required here to deny review. What I'm not clear is that the Board is saying, that the Board actually said what you're saying it's saying. Why not, Your Honor? Because there are two problems, and one I want you to address first. What do we do with the statement that, well, this threat occurred in the United States? We know that a threat that occurs in the United States can demonstrate changed country conditions in Nigeria. The Board seems, on its face, just to have said, well, we won't count threats that occur here. I don't think that's correct, Your Honor, and let me explain why. All right. Well, their decision was before Chandra. This decision was before Chandra, yes. So... But regardless, I don't think there's any error in that statement. This... Threats in the United States are not changed conditions in Nigeria. But, Your Honor, they're talking about this in terms of materiality, not as far as whether... But you are, and you're doing a good job of it. No, no, but... I'm trying to read the Board's decision. No, but, Your Honor, look at the first full paragraph on page 6. She has not explained how this is material to her claim. She's talking about the 2010 threat. Right. And then it goes on to say, moreover, the person who threatened the Respondent was in the United States. And threats... Threats in the United States are not changed conditions. So what you're saying is excise the second half of that paragraph and only look at the first half. No, no. No, Your Honor, respectfully, I'm not saying that because, look, it says that she was threatened with harm in the United States. So the Board is saying we don't believe that that's material to her claim about being sent back to Nigeria and being harmed by drug traffickers. Well, what does it say threatened with harm in the United States? It says threatened the Respondent in the United States. That she was personally threatened in 2010... Right. ...and threatened inside the United States. Threatened the Respondent in the United States. It doesn't say threatened with harm in the United States. Well, granted, the Board doesn't say that, but the Petitioner did. The Petitioner said that in her motion to reopen. She argued that this individual, Mr. Gabanga, was upset that she wouldn't appear in... That was going to harm her here. Yeah. Because that's not apparent from the Board's order. But it's what was brought before the Board. Granted. But before the Board, the Petitioner said, look, this guy, Mr. Gabanga, who was in the United States, wanted her to appear in adult films. She rebuffed him or to work in his adult film industry. She rebuffed him. And he threatened her right then that he was going to go break her legs. And all that might not be evidence of changed country conditions in Nigeria because it's wholly United States-based. And so perhaps that's true, but that's not what the order tells me. No, but the Board is saying we don't understand how this is material to her claim. I hope I'm being clear on that. No, you are being clear. Okay. It requires that I go past the Board's order and go back and look at the evidence. But I think that's appropriate. And figure out what evidence they're talking about. I think that's appropriate. You can't look at the Board. My principal point here today is you can't look at the Board's opinion in a vacuum. You have to look at the arguments that were brought before it. Just one other question. Sure. I know we've gone over time, but what is the effect of our decision in 2008? In other words, how does that affect what we're doing today? We affirmed the Board's denial of. . . Right. So are we only looking forward from 2008, or do we have to look backward past that? I think you do have to look backwards past it. Because as my opponent indicated, the 2008 or the prior motion to reopen didn't deal with changed circumstances. It was only a. . . It was simply a first motion. We're bringing our claim under the Convention Against Torture. It's untimely, but we're bringing it now.  We didn't bring it in 1999. We're bringing it now. Exactly. So I do think you have to do the changed circumstances analysis. But I guess I'm focusing on the untimeliness issue. In other words, what did we hold in 2008? Well, I think the holding was that, look, Petitioner had noticed that by June 21st, 1999, she was supposed to file a claim under the Convention Against Torture. Right. Publish that notice in the Federal Register. Right. And this Court held that was sufficient notice. Right. And, you know, importantly. . . And therefore upheld the Board's denial. Yes. Okay. So I'm just trying to figure out what the effect of that is on what we're doing today. She comes in in 2010 and says, well, maybe my application, my 2004 application was denied because it wasn't filed in 1999. Right. But now I've got some new stuff to bring to the Board's attention. And does that reopen everything that happened since 1993 for the Board's consideration or only things that happened after 2008? In other words, had she forfeited the stuff that happened before 2004? I wouldn't be disappointed if you held that she forfeited. No, no. I'm not purporting to hold anything. I'm just trying to figure out what the law requires. Right. I think here's the way I think the Court should consider the 2008 and the prior motions to reopen, the 2008 opinion by the Court. It shows that Petitioner had a sufficient amount of due process to bring this claim. You know, the law of every court, of course, is you can't rest on your rights. So that's why the 1999 deadline is important. She was told, the world was told, bring your claims for a cat by June 21st, 1999. She had the opportunity to bring these concise claims in 1999, except for the 2010 threats, but everything up to that. She had the opportunity to do that. She had the opportunity to bring it in 2004. Didn't do it. She had the opportunity to bring it in 2010. Didn't do it. So to me, the effect of the Court's 2008 order and the fact that she rested on her rights in bringing this precise claim until this time shows that she had absolutely sufficient due process to bring it and didn't do so. That's not what the reg says, though. Well, the reg says to bring it by the... No. Well, once you bring your claim, now for changed country conditions... Right. ...you go back to... The time of the previous hearing, it says. And again, that's because of the history of the two regs which Petitioner and our answering brief wrote about in our briefs, that, you know, there was, in 1993, there wasn't the opportunity to bring Kat, but there was in 1999, and that's where she failed to do so. We let you, we gave you plenty of time. Much appreciated, Your Honor. We respectfully request that the Court deny this petition. Thank you. Okay. Petitioner has a couple of minutes for rebuttal. Thank you. Initially, I would like to respond to Respondent's assertion that I did not raise that the aggregate or totality of the events from 1993 to 2010 must be considered in my original motion to reopen. I did so... Well, you don't have to defend that. Okay. The Board has to consider that and we have to consider it, and I think your opponent said that. Okay. So focus on some other things. Fine. The... I also would like to clarify that the record does establish that the mother continued to be approached after 1993 because her declaration states that the initial approach was several months after her daughter's arrest. Next, I would like to clarify that the particularly clear error of the Board on the Chandra issue that I've already mentioned, but I think is worth restating because it's enough to warrant reversal for this alone, is the statement on page at AR6 where the Court says that threats in the United States are not changed conditions in Nigeria. And that's the question I wanted to ask you in light of what your opponent said. Whether that's artful or an artful language, your opponent says the only new threat in the United States that was before the Board was a threat that was United States-based and had nothing to do with Nigeria other than the fact that it was made by a Nigerian. Perhaps I'm rephrasing his argument in a way that you might object to, but I think that's what he said. And the Board said, well, that doesn't help us because that's a United States-based threat to do harm in the United States. Why does that demonstrate changed country conditions in Nigeria? For two reasons. First, under Chandra, if that threat is viewed as a change in her personal circumstances because it was a personal interaction that she had, then it has to be considered in conjunction with what occurred in Nigeria. Second, it was not just made by any Nigerian individual in the United States. This was an individual who was affiliated with Bolaho. And shortly after he made that threat by phone, her mother was approached out of the blue for the first time in over 15 years by other individuals associated with Bolaho. So this is clearly connected. This cannot be viewed in any way to be in isolation. Can you, again, I know we're taking advantage of your time, but it's helpful to me. Can you tell me what occurred, the entire substance of the new things that occurred that were the basis of your last motion? Yes. I know they're supposed to be considered in the aggregate, but just focus on the things that were the basis of the new motion. What were they? Absolutely. The new motion was based on several things. First, from October 1993 until approximately 1997 or 1998, Petitioner was continuing to receive letters from Bolaho with threats. Second. But those were the subject of your 2004. They were not. They were not the subject because you didn't. She's never raised them. You never raised them. Okay. None of these specific facts, absolutely none of them, have ever been raised before this motion to reopen. They had occurred, but you hadn't raised them. Correct. And they didn't have to be raised because she had what we can refer to as sort of a free shot to apply for a cat based on some preexisting claim. Okay. Let me change it. Let me do it differently. Tell me all the new facts that occurred after your application that this Court eventually rejected in 2008. I can do that, but I would like to stress that it's not.  I understand that you're not limited to those. I just want to know what they are. Okay. After 2008. No, after 2004 because it took from 2004 to 2008 for the. After 2004 is the same as after 2008 because the only things that occurred were in 2010. And those were the threat in the United States and the approach to the mother. First, one Nigerian individual who's affiliated with Bolaho called Petitioner on the phone a couple of times out of the blue, found her, found her phone number and started calling her. No explicit threat was made, but she was nervous by this. Then Benga contacted her, the second Nigerian individual. And he's the one who got threatening. And then just a short while later, her mother's approach to Nigeria for the first time. I know what they are. I was just trying to figure out what occurred after when. Sure. Put aside your legal significance. I didn't mean to. No, no. But I will just take this moment to reemphasize that Malti directly contradicts what Respondent was asking for because in Malti this court held that it is not the date of a prior motion that controls. In Malti, the Petitioner had filed a motion to reopen after the final order of removal on a different basis. That motion to reopen was denied. And at issue before this court was whether the changed circumstances should be measured from the date of the prior motion or from the date of the prior hearing. And Malti explicitly said it is not from the motion. It is from the hearing as the plain language of the regulation state. I'd also like to address that it's vital that the court consider its case law under Korbelina and Krotova, that it must look at the cumulative effect of multiple incidents. Under Vohora, that an applicant is able to wait until circumstances change and the new facts make it substantially more likely that they will prevail. And most importantly, Quijada Aguilar, that it must look at all of the relevant evidence and the aggregate risk of torture. In fact, in Quijada Aguilar, the Petitioner had waived an argument before the board, but this court said that it doesn't matter. The court is required because it's cat to consider all evidence. Also, under Miney, the nature and increasing frequency, all of these things go to why multiple threats can be different and are different in Petitioner's case. Okay. Thank you. Thank you. So thus, we're asking for a remand with instruction for an evidentiary hearing. Thank you. Thank you, counsel. We appreciate your arguments on this case. Interesting. The matter is submitted.
judges: Paez, Murguia, Hurwitz